IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROY MITCHELL,

    Plaintiff,

  v.

DANE COUNTY SHERIFF
DEPARTMENT, et al.

    Defendants.

OPINION & ORDER

Case No. 16-cv-352-wmc

Plaintiff Roy Mitchell is proceeding in this action under 42 U.S.C. § 1983 on claims that various Dane County officials subjected her to conditions of confinement that violated her Fourteenth Amendment due process rights. In particular, she is proceeding on claims that she was housed in a section of the Dane County Jail that exposed her various hazards, including sewage flies, asbestos, lead, and black mold. Now before the court is defendants' motion for summary judgment (dkt. #261), which will be granted.[1]

## UNDISPUTED FACTS

The following facts are material and undisputed unless otherwise noted. The court has drawn these facts from the parties' proposed findings of fact and responses, which

---

[1] Also pending is plaintiff's motion for free access to PACER (dkt. #318), which will be denied because she will not experience "unreasonable burdens" without access to PACER. *See Day v. Spectrum Brands Holdings, Inc.,* No. 15-cv-140, 2015 WL 6143481, at *4 (W.D. Wis. Oct. 19, 2015). While Mitchell contends that her access to PACER has been cut off, granting her motion at this point is unnecessary. For one, as defendants' motion for summary judgment will be granted, there will likely be few additional filings in this lawsuit. Furthermore, to the extent that additional filings are necessary, Mitchell has been diligent about this lawsuit, calling the court when necessary and apprising the court when her address or contact information change. As such, the clerk's office has no difficulties ensuring that Mitchell receives any filings and/or orders that she needs to review. Accordingly, the court is unpersuaded that Mitchell needs free access to PACER to litigate this lawsuit.

includes Mitchell's proposed findings of fact. Defendants ask that the court deem paragraphs 11-54 of their proposed findings of fact undisputed because Mitchell failed to respond to them specifically as prescribed by the Preliminary Pretrial Conference Order (dkt. #139, at 17). While defendants correctly point out Mitchell's obligation to respond to defendants' proposed factual findings by paragraph, the court has not outright ignored Mitchell's various other filings that purport to support her disputed facts. As such, the court has deemed the majority of defendants' proposed findings of fact undisputed, but only where Mitchell has submitted no admissible evidence in dispute.

I. Parties

   A.   Plaintiff

Between 1998 and September of 2016, Mitchell has been incarcerated at the Dane County Jail on various occasions.[2] Additionally, Mitchell has also been incarcerated at multiple Wisconsin Correctional Institutions, including Fox Lake, Dodge, Oakhill, Oregon, Stanley, Chippewa Falls, and Portage, as well as the Columbia County Jail. Mitchell is no longer incarcerated in any of these institutions and is currently on active community supervision.

Mitchell suffers from a number of mental health issues that she avers is related to her transgender identity and her African-American race.[3] Mitchell has been seen by health

---

[2] In fact, at the time she originally filed this lawsuit in 2016, Mitchell was being held in the Dane County Jail.

[3] Although her gender is not relevant to this lawsuit, the court notes for clarification purposes that while Mitchell is biologically a male, she identifies as a female.

2

care providers since being diagnosed with atypical pneumonia in September of 2016. (Ex. C (dkt. #267-3) at 2.) Also, in September of 2016, Mitchell underwent a lead exposure test resulting in a "normal" level. (Dkt. #267-3) at 74.) Since that time, Mitchell has since been seen by her health care providers multiple times for complaints of problems breathing, nasal congestion and problems walking for long periods of time, but she has not been diagnosed with pneumonia since 2016. (*Id.* at 17; dkt. #290-1, at 4; dkt. #293-1, at 1.)

Although a regular smoker of cigarettes in the past, Mitchell's records further indicate that she reported to her health care providers that she believes these symptoms to be related to her exposure to asbestos at the Dane County Jail. At the time of her deposition, August 29, 2017, Mitchell stated that she was suffering from bronchitis, but the court has been unable to locate a medical record confirming that diagnosis. (Mitchell Dep. (dkt. #269), at 34-35.) Mitchell has a February 2018 appointment scheduled a UW Health pulmonologist for suspected asbestos exposure (*id.* at 4), but the court has been unable to identify any instance in her medical records in which a health care provider confirmed actual exposure to asbestos.

B.  **Defendants**

The defendants include Dane County Sheriff Dave Mahoney, Dane County Jail Captain Anhalt, Sergeant Olsen, Sergeant Skerpenski, Deputy Merrill, and Dane County Administrator Joe Parisi. Mitchell claims that each of these defendants knew about the conditions in the jail and failed to correct them. As to Parisi specifically, Mitchell claims

3

that he failed to pass a budget that would provide funding to improve conditions at the Dane County Jail.[4]

## II. Conditions at the Dane County Jail

The Dane County Jail is comprised of three facilities: the City-County Building, the William H. Ferris Center, and the Public Safety Building. The City-County Building was constructed in 1955. Currently (and during the relevant time period), the Dane County Jail operated on the 6th and 7th floors of the City-County Building. In 1982, the William H. Ferris, Jr. Center was constructed as a Huber Law facility. In 1994, the Public Safety Building was constructed and includes 400 additional beds, office space for the Dane County Sheriff's Department, the Dane County Coroner, and the Department of Emergency Government.

Mitchell's claims in this lawsuit relate to the original floors of the City-County building, and the parties agree that Mitchell was housed in the City-County Building and Public Safety Building during the relevant time period. In particular, Mitchell claims that during her time on the 7th floor of the City-County Building, she (along with other inmates and staff) had been exposed to four types of hazards: asbestos, lead paint, black mold and "sewage flies" that appear around the drainage holes in the Jail.[5] Beyond personally

---

[4] Mitchell does not recall any conversations she personally had with any of these defendants regarding the specific conditions to which she was subjected at the Jail.

[5] Mitchell's proposed findings of fact also include reference to alleged violations of the Prison Rape Elimination Act ("PREA"), but the court denied Mitchell leave to proceed on this unrelated claim in this case. (Dkt. #127.) As Mitchell has neither filed a motion for reconsideration of this dismissal, much less included any reason why the court should revive that claim, the court has not incorporated into the relevant facts here any of plaintiff's allegations related to sexual assault or the

4

averring that she has been exposed to all of these conditions, Mitchell submitted sixty pages of "sworn declarations" of other inmates. (Ex. B (dkt. #276-2).) These sworn statements similarly refer to allegedly unsanitary conditions in the jail, including the presence of black mold and bugs, although none put Mitchell near any such hazards; as opposed to being housed in the jail generally. Nor do they provide additional, specific information about the conditions to which Mitchell was exposed. As such, even setting aside the question of the admissibility of these statements, they do not provide much corroborating evidence material to proving the *defendants* acted with deliberate indifference to Mitchell's exposure to constitutionally infirm conditions of confinement. Accordingly, the court has not considered those statements material for purposes of evaluating Mitchell's constitutional claims in this lawsuit. Rather, the court will turn to the material facts in the record specifically related to Mitchell claims: her exposure to asbestos, lead paint, black mold and sewage flies.[6]

For their part, defendants submitted proposed findings of fact specific to each of the four types of hazards claimed, which the court addresses in turn below. As an initial matter, Mitchell has submitted a June 2014 "Needs Assessment and Master Plan" report

---

threat of sexual assault.

[6] Like most of plaintiff's proposed findings of fact, many of the facts contained in these affidavits do not relate to environmental hazards at all. Since submitting her proposed findings of fact, Mitchell has filed numerous additional "exhibits" to her proposed findings of fact, which include additional affidavits from herself and other inmates, articles about the Dane County Jail and asbestos as well as other lawsuits involving the Dane County Jail. The court need not sift through all of her filings, *D.Z. v. Buell,* 796 F.3d 749, 756 (7th Cir. 2015) (at summary judgment, the court is court not obligated to sift through the record in search of evidence to support plaintiff's claim). Nonetheless, in light of her *pro se* status, the court reviewed these materials to resolve defendants' motion for summary judgment only insofar as it was necessary to evaluate whether she submitted facts material to her claims in this lawsuit.

for the Dane County Jail and Sheriff's Office created by the engineering firm of Mead & Hunt, and directed to, among others, Administrator Parisi, Sheriff Mahoney and Jail Captain Anhalt. (Ex. A (dkt. #276-1).) Mitchell argues that this report establishes that the inmates were held in "dire psychological and unsafe dehumanizing environmental conditional hardships." At summary judgment, Mitchell submitted what appear to be portions of that final report, which do *not* include such an unqualified condemnation, but does contain an executive summary stating that "the age of the City County [Building], outdated technology, and poor physical conditions of the buildings cause many risks and hazards." (*Id.* at 8.) The report further states that among those risks are the "[e]xistence of hazardous materials (asbestos and lead paint)" in the portions of the Jail located in the City County Building. (*Id.*) Finally, the report states that "stakeholders" should use caution in "considering long term solutions" for the City County Building due to the immense costs associated with remodeling and updating the City-County Building to meet those concerns. (*Id.*) While some of the statements from the report would appear to corroborate some of Mitchell's own claimed experiences at the Dane County Jail, like the affidavits of other inmates, they are not specific enough, alone, to support a finding of deliberate indifference.

    A.    **Asbestos**

Assuming for the moment that Mitchell was exposed to a dangerous level of asbestos at some point in her life, the question remains whether plaintiff has submitted proof of the presence of, and exposure to, asbestos during the relevant time period that she was an inmate of the Jail's 7th floor.

6

Scott Teuscher, Dane County's Safety Coordinator, is a Certified Asbestos Inspector and holds a current license to do inspections in the State of Wisconsin. In this role, Tuescher is responsible for inspecting and sampling materials for the presence of asbestos-laden materials before any Dane County renovation and demolition projects can begin, one of the requirements in the County's written policies on asbestos control. When Teuscher determines asbestos testing is necessary, he obtains a sample and sends it to the State of Wisconsin Hygiene Lab. If the Hygiene Lab reports to Teuscher a positive result greater than 1%, Teuscher informs the project manager that a licensed abatement contractor must be contacted before work can continue. Then Dane County either contracts with Dirty Ducts Cleaning & Environmental Inc. for small abatement products or starts the bidding process.

Of special relevance here, it is undisputed that on August 29 and 30 of 2017, Teuscher toured and inspected each cell and holding area within the Dane County Jail where Mitchell has been housed in since 1998, including cells in the City-County and Public Safety Buildings. Teuscher's visual inspection did not lead him to believe that any of these cells had asbestos-containing materials. Even though other areas in the buildings needed testing, Teuscher did not deem testing necessary in Mitchell's cells because they were in good condition and not subject to renovation or demolition.

Still, Mitchell maintains that *she* was exposed to asbestos, citing only her own, self-serving observations about exposure, past and current issues with her lungs, and the 2014 report recognizing the existence of asbestos in portions of the Jail, a place she stayed off and on between 1998 and 2016. At the same time, Mitchell admits that she is not an

expert on asbestos, she does not know what asbestos is or looks like; she is unable to say specifically where in the Dane County Jail asbestos was located; and she cannot identify any laws or regulations that the Dane County Jail violated with respect to asbestos. (Mitchell Dep. (dkt. #269) at 57-58.) Mitchell also submitted no evidence that she had been exposed to a *dangerous* level of asbestos as the Dane County Jail. Further, Mitchell has never been diagnosed with mesothelioma, asbestosis, or any other asbestos-related illness. (*Id.* at 54-55.) While she has an upcoming appointment related to her complaints of asbestos exposure, she has not been told to date by any medical professional that her health was endangered or compromised due to asbestos exposure.

B. **Lead Paint**

Mitchell also avers that there is lead on the bars in the Jail, and "possibly in the water," but has submitted no evidence beyond her own belief on the matter. For example, Mitchell has no memory of ever ingesting paint chips or otherwise ingesting lead paint while at the Dane County Jail. She does aver in one of her affidavits that on September 1, 2016, she and other inmates received a notice that Jail staff would be testing the water, leading her to conclude that she "could have been exposed to high levels of lead." (*See* Ex. B (dkt. #267-2) at 44-45.) However, Mitchell has never been diagnosed with lead poisoning, and, as noted, a lead test conducted on September 16, 2016, showed that her lead level in her blood was normal. (Mitchell Dep. Ex. 2 (dkt. #269-1).)

8

C.  **Black Mold**

Similarly, Mitchell has never been diagnosed with any mold-related illness, but she claims that it was present during her time at the Dane County Jail. Mitchell again acknowledges that she is not an expert in black mold and has not been able to identify whether any substance she saw in the jail was actually mold. Rather, she testified that she was unsure exactly what it was, but saw what she believed to be "fungus growing in the corners of the showers and even some cells." (Mitchell Dep. (dkt. #269) at 67.) Mitchell further acknowledged in her deposition that, on a weekly basis, Jail inmates sweep and mop floors, as well as spray showers, which cleans the very surfaces that she believed had mold upon them. Finally, Mitchell does not dispute that the Dane County Jail Administration routinely checks the jail to make sure that it is sanitized.

D.  **Sewage Flies**

Finally, Mitchell complains that since the 2000s, there have been flies surrounding the drainage holes in the Jail, including sinks, toilets, shower drains and cellblock drains. Mitchell testified that these flies were in her face and food, and that they consistently came up through the drains, and might "come out in swarms" at any time of day. (*Id.* at 81-82.) Nevertheless, Mitchell does not dispute that the Dane County Jail contracts with Wil-Kill, a pest control servicer and exterminator. Wil-Kill provides its services to the Dane County Jail on a weekly basis during the spring and summer months, and on a bi-weekly basis during the fall and winter months. She can also call on them on an as-needed basis. Mitchell has acknowledged that the Dane County Jail also uses inmate worker to address

9

the fly issue by pouring bleach down the drains. (*Id.* at 84-85.) While Mitchell complains about seeing sewage flies, she does not recall ingesting one, and she has not identified any injuries sustained as a result of these flies. (*Id.* at 84.)

OPINION

At screening, the court granted Mitchell leave to proceed on a claim of hazardous jail conditions against Dane County Administrator Joe Parisi, defendants Sheriff Dave Mahoney, Captain Anhalt, Sergeant Olsen, Sergeant Skerpenski and Deputy Merrill. The Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Although the parties do not address the underlying basis for her constitutional claims further, the records shows that Mitchell was in and out of the Dane County Jail for several years, making it likely that she was both a pretrial detainee and a convicted prisoner during her various stays there. Fortunately, this distinction between her official status is largely irrelevant for purposes of analyzing her claims in this lawsuit. Like claims alleging denial of adequate medical care brought by convicted prisoners, the Eighth Amendment standard applies to plaintiff's due process claim. *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015) ("There is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions of confinement claims, and . . . such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment test.") (citing *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013)). The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon

prison officials the duty to provide prisoners "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To constitute cruel and unusual punishment, conditions of confinement must be extreme. *Id.*

To demonstrate that prison conditions violate the Eighth Amendment, a plaintiff must allege facts that satisfy a test involving both an objective and subjective component. *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994). The objective analysis focuses on whether prison conditions were sufficiently serious so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," *Farmer,* 511 U.S. at 834, or "exceeded contemporary bounds of decency of a mature, civilized society," *Lunsford,* 17 F.3d at 1579. The subjective component requires an allegation that prison officials acted wantonly and with deliberate indifference to a risk of serious harm to plaintiff. *Id.* Here, defendants move for summary judgment on the grounds that: (1) plaintiff's conditions were not sufficiently serious to constitute cruel and unusual punishment; (2) regardless of the conditions, defendants were not deliberately indifferent to them; (3) plaintiff has not submitted evidence of injury; and (4) defendants are immune from monetary damages. Finding each of defendants' first three arguments in particular provide an independent basis to award summary judgment to defendants, the court will grant defendants' motion.

I. **Objectively Serious Conditions**

The court will address the four challenged conditions separately, but the overarching problem with Mitchell's position on summary judgment is that she has failed to submit evidence that would permit a reasonable jury to find that the conditions, whether considered

separately or together, actually existed in a manner that can fairly be characterized as falling below minimal societal standards.

   A.   Asbestos

As to her claims about asbestos, plaintiff's evidence -- her own statements and the 2014 report-- permits the trier of fact to conclude no more than that the portions of the City-County Building in which Mitchell was housed at times between 1998 and 2014 contained asbestos. However, the mere *presence* of asbestos does not constitute cruel and unusual punishment because, while unfortunate, "the fact remains that asbestos abounds in many public buildings," and "exposure to moderate levels of asbestos is a common fact of contemporary life." *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993). Thus, the court must inquire into whether plaintiff has presented evidence that would allow a reasonable jury to find exposures greater than moderate levels of asbestos or, at least, greater than contemporary bounds of decency would abide during that timeframe.

In *McNeil*, while accepting the plaintiff's allegations that he was exposed to asbestos, the Seventh Circuit faulted plaintiff's failure to allege that he was forced to stay in an area where "friable asbestos filled the air." *Id.* (citing *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990)). In a similar scenarios, the Seventh Circuit faulted inmates whose evidence amounted to inmate statements that they saw asbestos dust in the air because that evidence was contradicted by the fact that airborne *asbestos* particles are invisible and require laboratory analysis for proper identification. *Contreras v. Lane*, 77 F.3d 484 (7th Cir. 1996) (unpublished table decision) (emphasis added).

Here, plaintiff concedes that she cannot identify asbestos. More importantly, she has submitted no evidence supporting a finding that the asbestos within the City-County Building

12

was exposed to the air, nor that she otherwise was exposed to friable asbestos when housed there. While plaintiff's medical records show that she *reported* asbestos exposure to her treating professionals after she learned about the 2014 report, she submitted *no* evidence that actually confirms (or even suggests) exposure. In fact, there is no evidence of measurements about the air quality, nor instances where she was actually present for major construction or renovation projects that could have opened up the possibility of exposing her to asbestos-laden materials, which was the concern raised by the 2014 report. Furthermore, plaintiff does not dispute defendants' evidence that *none* of the cells in which plaintiff was housed posed a risk of exposure to asbestos. Even assuming that plaintiff does in fact suffer from asbestos-related illness, therefore, she has failed to submit evidence of a "causal connection" between her potential injury and exposure at the Dane County Jail. *Maus v. Murphy*, 29 F. App'x 365, 369 (7th Cir. 2002) (citing *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999)). Accordingly, the record before this court on summary judgment does not support a finding that the presence of asbestos in the portion of the City-County Building in which plaintiff was housed for sporadic periods of time between 1998 and 2016 created conditions of confinement that violated her constitutional rights. *See Dugan v. Washington*, No. 99-C-4382, 2001 WL 741626, at *7 (N.D. Ill. June 11, 2001) (dismissing plaintiff's claim of exposure to asbestos where evidence was limited to plaintiff's affidavit).

B.   **Lead Paint**

With respect to the lead paint, plaintiff's own September 2016 normal lead test results contradict her claim of exposure to an unhealthy amount of lead paint. Regardless, plaintiff's only evidence as to the *existence* of the lead paint is again her own belief that the chipped paint she noticed on the jail bars were lead-based. Plaintiff admits that she cannot identify lead-

13

based paint with accuracy, and she has no memory of ever ingesting any of the supposedly lead-based paint. While plaintiff again offers the 2014 report noting that the City-County Building portions of the Jail carry the risk of lead exposure, that report does not include specific information about the location, nor prominence, of lead paint, and similar to asbestos, the mere presence of lead-based paint is insufficient to support a conditions of confinement claim. *See Mejia v. McCann*, No. 08-C-4534, 2010 WL 5149273, at *8 (N.D. Ill. Dec. 10, 2010) (collecting cases in which court have "held that claims of lead paint undercoats on prison walls are not the kind of deprivation of basic human needs redressable under the Eighth Amendment"). And as with asbestos, plaintiff offers no evidence of exposure to lead because of major construction or renovation while house in the Dane County Jail.

### C. Sewage Flies

Taking as true plaintiffs assertions that there were sewage flies surrounding the drains in the Jail, the evidence of record does not support a finding of cruel and unusual conditions of confinement. To rise to the level of a constitutional violation, the Seventh Circuit has recognized that long-term, significant, unaddressed, infestations, coupled with the risk of physical harm, can give rise to an Eighth Amendment violation. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (plaintiff had the burden of demonstrating a persistent problem with pests and "significant physical harm" to prevail on a claim related to pest infestation); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (no Eighth Amendment violation where prisoner alleged he saw several roaches in his cell at a time, but they were treated by an exterminator every six weeks and by request); *but see Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (summary judgment dismissal of infestation claim inappropriate in light of the

"myriad infestations," including mosquitos, mice and birds, coupled with a lack of access to cleaning supplies).

Here, plaintiff provides very little specific information about the presence of sewage flies, much less an "infestation." Nor has she provided *any* context that would support finding the presence of sewage flies was significant enough to pose a physical threat. For example, had plaintiff testified that she saw swarms of sewer flies on a daily basis, and that she was bitten by (or otherwise exposed to) flies to the point of injury, perhaps a reasonable jury might find that the conditions were objectively serious. But that decidedly is *not* the record before the court: none of plaintiff's medical records indicate complaints about or medical attention for fly bites or physical or mental effects from exposure to flies that have required treatment. Furthermore, plaintiff does not dispute that the Dane County Jail brings in an exterminator on a regular basis *and* provides inmates with access to cleaning supplies, both facts also weighing against a finding of a sufficiently serious condition of confinement.

### D. Black Mold

Finally, while plaintiff's representations support a finding that there was mold on the floors during her time in the Dane County Jail, she has submitted zero evidence that the type of mold present can cause respiratory problems, nor that the mold was left untreated. To the latter point, plaintiff acknowledges both that inmate workers cleaned the floors on a weekly basis, and when inmate workers cleaned the floors, the cleaning eliminated the mold. Even setting aside those contradictions *and* crediting plaintiff's allegations about black mold, the Eighth Amendment does not guarantee detainees or inmates a "maximally safe environment, one completely free from pollution or safety hazards." *Carrol v. DeTella*, 255 F.3d 470, 473 (7th Cir. 2001) (allegation that water was contaminated with lead and radium did not

15

constitute cruel and unusual punishment where there was no evidence that the levels of those contaminants presented the risk of harm).

While the court certainly accepts that the presence of mold was unpleasant and undesirable, because plaintiff has not even alleged, much less offered evidence that she has suffered any ill-effects from mold, plaintiff has failed to submit sufficient evidence that the presence of mold adversely affected her day-to-day life in a manner that would implicate the Eighth Amendment. Indeed, none of Mitchell's many filings support a reasonable inference that the four materials to which she claimed to have been periodically exposed at the Dane County Jail between 1998 and 2014 constitute an Eighth Amendment violation.

At the summary judgment stage, plaintiff was obligated to come forward with admissible evidence in support of her allegations about the seriousness of the conditions to which she was exposed. In particular, she needed to submit more than a "scintilla of evidence in support of [her] position," such that a jury could *reasonably* find in favor of his position. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Summary judgment is the 'put up or shut up' moment in a lawsuit.") (emphasis added). Although Mitchell had the opportunity during discovery to garner specific and concrete evidence about the nature and severity of these conditions, the record contains very little or no evidence confirming the severity of the conditions she complains about in her complaint. As such, judgment in defendants' favor would be appropriate for this reason alone.

## II. Deliberate Indifference

Defendants further contend that plaintiff failed to submit evidence that would permit a reasonable fact finder to conclude that any of the individually named defendants acted with deliberate indifference. As an initial matter, plaintiff submitted no evidence that *any* of the

individual defendants she is proceeding against knew about her specific complaints about asbestos, lead paint, mold or flies.

With respect to the asbestos and lead paint only, it may be reasonable to infer from the 2014 report that Parisi, Mahoney and Anhalt were on notice that the City-County Building generally contained both of these potential hazards. However, this piece of evidence advances plaintiff's theory only minimally, since knowledge of their presence alone does not establish knowledge that the conditions were sufficiently serious to constitute cruel and unusual punishment.

Furthermore, just as there is no evidence that *plaintiff* was actually exposed to dangerous levels of either asbestos or lead paint, there likewise is no evidence that *any* of the defendants actually knew about exposure to any of the four hazards and failed to respond to them in an appropriate manner. To the contrary, plaintiff has acknowledged that the Dane County Jail had policies and procedures in place to address the presence of asbestos, flies and mold, and nothing in the record suggests that defendants have failed to address or remediate dangerous exposure to lead paint. Specifically, she does not dispute that the Dane County Jail employs exterminators on a seasonal and regular basis to eliminate the flies. Similarly, as to the mold, the jail not only has inmate workers clean the floors on a weekly visit and has staff also clean the floors, Dane County Jail policies permit the jail to contract with third parties for more thorough cleaning projects, and plaintiff admits, based on her own observations, the cleaning efforts have been successful. Based on this record, a reasonable fact finder simply could not

conclude that any of the named defendants' acted with deliberate indifference to the alleged conditions.[7]

## III. Injury

Even assuming that Mitchell submitted evidence supporting a finding she was not only exposed to conditions of confinement that exceeded the contemporary bounds of decency *and* that the defendants were deliberately indifferent to those conditions, she has submitted no evidence that she was injured *because of* that exposure. *See Maus v. Murphy*, 29 F. App'x 365, 369 (7th Cir. 2002) ("a plaintiff must show both injury and a 'causal connection between that injury and the deprivation of a constitutionally protected right'") (quoting *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999)). As to lead paint and sewer flies, plaintiff has submitted no evidence of physical or psychological harm *caused* by those conditions beyond her own

---

[7] Defendants would also likely be immune from monetary damages due to qualified immunity, which protects government employees from liability for civil damages for actions taken within the scope of their employment unless their conduct violates "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In determining whether a constitutional right has been clearly established, it is unnecessary for the particular violation in question to have been previously held unlawful." *Lewis v. McLean,* 864 F.3d 556, 563 (7th Cir. 2017) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Given that plaintiff has cited no analogous decision finding in her favor, none of the defendants appear to have violated a clearly established right. Moreover, defendant Parisi in particular is entitled to absolute immunity as his involvement in plaintiff's claims involve actions taken in his legislative capacity. *See Bogan v. Scott-Harris*, 523 U.S. 44, 53-54 (1998); *Reeder v. Madigan*, 780 F.3d 799, 802 (7th Cir. 2015) (dismissing claims against Illinois legislative officials and staff on ground of absolute legislative immunity). The Supreme Court has held that officials are shielded from liability for "legitimate legislative activity," which includes acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation …." *Gravel v. United States*, 408 U.S. 606, 625 (1972); *see Bagley v. Blagojevich*, 646 F.3d 378, 385 (7th Cir. 2011) ("Introducing, voting, and signing into law a budget were 'formally legislative' actions even though an executive official (the mayor) introduced and signed the budget."). As plaintiff faults Parisi's inability to obtain votes that he needed to obtain his desired budget to make improvements at the Jail, his decisions were the result of the discretion attendant to his policy-making authority as the Dane County Executive. Accordingly, his action are protected by absolute immunity.

averments. In particular, plaintiff's medical records from the relevant time period contain *no* reference to the harm she suffered as a result of being exposed to either lead paint or sewer flies, and at least as to lead paint, the record contradicts plaintiff's conjecture that she was injured from lead paint exposure. Plaintiff's evidence related to her alleged asbestos and mold exposure requires only slightly more discussion. Her medical records indicate that plaintiff is scheduled to meet with a pulmonologist regarding multiple respiratory symptoms (coughing, wheezing, trouble walking long distances), which she attributes to her alleged asbestos exposure. While plaintiff admitted during her deposition that she also previously smoked cigarettes, if, indeed, she does receive a diagnosis of a condition typically caused by asbestos (or black or toxic mold exposure) such as asbestosis, mesothelioma, lung cancer or black mold poisoning, a reasonable fact finder may conclude that the injury was caused by one of the challenged conditions. Since the evidence of record establishes *neither* that plaintiff was exposed to dangerous levels or mold or asbestos, *nor* that the defendants were deliberately indifferent to those conditions, there would appear no reason to wait for the results of plaintiff's upcoming examination. For all of the reasons explained above, therefore, the court will grant defendants' motion and enter judgment in their favor.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #261) is GRANTED.

2. Plaintiff Roy Mitchell's motion for free access to PACER (dkt. #318) is DENIED as moot.

3. The clerk of court is DIRECTED to enter judgment in defendants' favor and close this matter.

Dated this 13th day of February, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge